IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, </br></br>Plaintiff,</br></br>v.</br></br>H. KRAMER & CO.,</br>BNSF RAILWAY COMPANY, and the</br>CITY OF CHICAGO</br></br>Defendants. | No. 1:21-cv-6749 |

# COMPLAINT

Plaintiff, the United States of America, by authority of the Attorney General of the United States, acting at the request and on behalf of the U.S. Environmental Protection Agency ("EPA"), through the undersigned attorneys, files this Complaint and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action brought by the United States pursuant to Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9607(a), against H. Kramer & Co., BNSF Railway Company, and the City of Chicago (the "Defendants"). The United States seeks to recover from the Defendants unreimbursed response costs that the United States incurred in addressing soils contaminated with lead and other hazardous substances at the Pilsen Area Soil Site in Chicago, Illinois (the "Pilsen Site" or the "Site"). The United States also seeks entry of a declaratory judgment on Defendants' liability for response costs that will be binding on any subsequent action or actions to recover further response costs related to the Pilsen Site, pursuant to CERCLA

Section 113(g)(2), 42 U.S.C. § 9613(g)(2) and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2201.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to CERCLA Section 113(b) and (e), 42 U.S.C. §§ 9613(b) and (e), and 28 U.S.C. §§ 1331 and 1345.

3. Venue is proper in this district pursuant to CERCLA Section 113(b), 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b) and (c) because the claims arose and the releases of hazardous substances at issue in this case occurred in this district.

## BACKGROUND

### Kramer and the Kramer Facility

4. Defendant H. Kramer & Co. ("Kramer") is an Illinois corporation with its principal place of business located in Chicago, Illinois.

5. For at least 100 years, Kramer has owned and operated a nonferrous metal smelting and refining facility located on the 1300 block of West 21st Street (between South Throop Street and South Loomis Street) in the Lower West Side (Pilsen) neighborhood of the City of Chicago (the "Kramer Facility").

6. Operations at the Kramer Facility have released metals classified as hazardous substances under CERCLA, including lead, zinc, and copper.

7. Hazardous substances released from the Kramer Facility were deposited and came to be located in nearby areas of the Pilsen neighborhood, including lead, zinc, and copper found in near-surface soils at the Pilsen Site.

BNSF

8.  Defendant BNSF Railway Company is a Delaware corporation that conducts business in the State of Illinois and in this district.

9.  BNSF Railway Company and/or its corporate predecessors (collectively referred to herein as "BNSF") conducted railroad operations on a former railroad spur property located southwest and west of the Kramer Facility, beginning on South Laflin Street and ending on West Cermak Road just east of South Loomis Street (the "BNSF Railroad Property").

10. When BSNF operated the BNSF Railroad Property, metals classified as hazardous substances under CERCLA – including lead, zinc, and copper – were deposited and disposed of on soils of the BNSF Railroad Property.

The City

11. Defendant City of Chicago (the "City") is an Illinois municipal corporation with its principal offices in this district.

12. The City has owned and operated a formerly unpaved east-west alley property located just south of the Kramer Facility, between West 21st Street and West Cermak Road and between South Loomis and South Throop Streets (the "City Alley Property").

13. When the City owned and operated the City Alley Property, metals classified as hazardous substances under CERCLA – including lead, zinc, and copper – were deposited and disposed of on soils of the City Alley Property.

The Pilsen Area Soil Site

14. The Pilsen Site abuts the Kramer Facility.

15. The Site is a residential, commercial, and industrial area of the Pilsen neighborhood with near-surface soils contaminated with lead and other metals, including zinc and copper.

16. In late 2012 and 2013, EPA performed soil sampling to assess the nature and extent of contamination in a set of assessment areas near the Kramer Facility.

17. Based on the sampling results, EPA decided to focus environmental cleanup efforts for the Pilsen Site on four assessment areas that were sampled by EPA: (i) the BNSF Railroad Property; (ii) the City Alley Property; (iii) a residential area immediately north of the Kramer Facility (called "Res1"); and (iv) another residential area further from the Kramer Facility, to the north and east of the Res1 area (called "Res2").

18. In each of those four assessment areas, the concentration of lead in multiple soil samples exceeded EPA's Removal Management Level for lead in residential soil. In addition, in some samples from some of those assessment areas, the concentrations of zinc and/or copper in soil samples exceeded EPA's Removal Management Levels for zinc and/or copper in residential soil.

19. The results of these sampling efforts were summarized in a set of EPA Removal Site Evaluation reports prepared in 2014.

20. In 2015, EPA decided to address the residential and non-residential geographical portions of the Pilsen Site as two "operable units" for the purpose of planning and implementing soil cleanup work through on-Site removal action.

21. EPA's National Contingency Plan regulations define an "operable unit" as follows:

> Operable unit means a discrete action that comprises an incremental step toward comprehensively addressing site problems . . . . The cleanup of a site can be divided into a number of operable units, depending on the complexity of the problems associated with the site. Operable units may address geographical portions of a site, specific site problems, or initial phases of an action, or may consist of any set of actions performed over time or any actions that are concurrent but located in different parts of a site.

40 C.F.R. § 307.14.

4

22. "Operable Unit 1" or "OU1" of the Pilsen Site consists of the non-residential geographic portions of the Site adjacent to the southwest boundary of the Kramer Facility and extending south and west of the Kramer Facility.

23. OU1 includes the BNSF Railroad Property and the City Alley Property.

24. "Operable Unit 2" or "OU2" of the Pilsen Site consists of the residential geographic portions of the Site that border West 21st Street immediately across the street from the Kramer Facility and extend north and northeast of the Kramer Facility.

25. OU2 includes the Res1 and Res2 assessment areas bounded by West 18th Place to the north, a north-south alley between South Allport Street and South Racine Avenue to the east, West 21st Street to the south, and South Loomis Street to the west.

The On-Site Removal Activities

26. In June 2015, EPA prepared an Action Memorandum selecting a time critical removal action for the excavation, disposal, and replacement of contaminated soil at the OU1 non-residential BNSF Railroad Property and City Alley Property.

27. In August 2015, EPA prepared a second Action Memorandum selecting a time critical removal action for the excavation, disposal, and replacement of contaminated soil at the OU2 residential properties.

28. CERCLA's definition of "removal" encompasses physical on-site activities such as the "cleanup or removal of released hazardous substances from the environment" and associated activities that "may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances." 42 U.S.C. § 9601(23).

29. Under a September 2015 Administrative Settlement Agreement and Order on Consent with EPA (the "Sept. 2015 ASAOC"), the three Defendants in this case agreed to perform the OU1 on-Site removal work prescribed by the OU1 Action Memorandum.

  a. In the Sept. 2015 ASAOC, the Defendants did not agree to reimburse EPA's costs of overseeing the performance of the cleanup work prescribed by the OU1 Action Memorandum.

  b. In the Sept. 2015 ASAOC, EPA reserved its right to pursue the Defendants for reimbursement of EPA's costs of overseeing the performance of the cleanup work prescribed by the OU1 Action Memorandum and all other costs of response activities related to the Site.

30. Under a December 2015 Administrative Settlement Agreement and Order on Consent with EPA (the "Dec. 2015 ASAOC"), Kramer agreed to perform certain preliminary tasks required for performance of the OU2 on-Site removal work prescribed by the OU2 Action Memorandum.

  a. In the Dec. 2016 ASAOC, Kramer agreed to: (i) work with EPA to obtain access agreements to perform additional soil sampling on certain residential properties in OU2; (ii) collect and analyze additional soil samples from certain residential properties in OU2; and (iii) document the size and conditions of the properties being sampled.

  b. In the Dec. 2015 ASAOC, EPA reserved its right to pursue Kramer for recovery of any unreimbursed EPA costs of overseeing the performance of the work required by the Dec. 2015 ASAOC and all other costs of response activities related to the Site.

31. In September 2016, EPA issued Kramer a Unilateral Administrative Order for Removal Actions at OU2 pursuant to CERCLA Section 106, 42 U.S.C. § 9606 (the "2016 UAO").

32. In the 2016 UAO, EPA ordered Kramer to perform all actions necessary to implement the OU2 Action Memorandum at certain identified residential properties in OU2,

including performance of the on-Site removal work to excavate, dispose, and replace lead-contaminated soils at those OU2 properties.

33. Kramer sent EPA written notice of Kramer's intent to comply with the 2016 UAO.

34. The OU1 and OU2 removal work required by the Sept. 2015 ASAOC, the Dec. 2015 ASAOC, and the 2016 UAO progressed simultaneously and overlapped.

  a. In both OU1 and OU2, on-Site removal work was performed by a contractor named GHD Services Inc. ("GHD") and its subcontractors.

  b. GHD and its subcontractors excavated more than 700 tons of soil from the OU1 properties and transported it off-Site for disposal.

  c. While working as Kramer's contractor, GHD and its subcontractors remediated 68 residential properties in OU2.

  d. An EPA On-Scene Coordinator and EPA contractor employees oversaw the removal work performed under the Sept. 2015 ASAOC, the Dec. 2016 ASAOC, and the 2016 UAO.

35. In 2018, EPA sent Notices of Completion of Work for most of the tasks required by the Sept. 2015 ASAOC, the Dec. 2015 ASAOC, and the 2016 UAO.

36. One of the Notices of Completion emphasized that the Defendants had a continuing obligation to conduct certain site control activities that the Sept. 2015 ASAOC required for the OU1 properties.

EPA's Response Activities Since Completion of the On-Site Removal Work

37. EPA and its contractors continued some response activities relating to the Pilsen Site after EPA issued the Notices of Completion concerning the tasks required by the Sept. 2015 ASAOC, the Dec. 2015 ASAOC, and the 2016 UAO.

38. The response activities by EPA and its contractors after issuance of the Notices of Completion included preparation of a removal summary report, community relations activities, cost accounting activities, and enforcement activities related to the Pilsen Site removal work.

EPA's Unreimbursed Costs for the Pilsen Site

39. To date, the United States has not been reimbursed for any of EPA's costs of overseeing the removal work performed under the Sept. 2015 ASAOC, the Dec. 2015 ASAOC, and the 2016 UAO, or any other response costs that EPA incurred for response activities associated with the Pilsen Site.

40. EPA incurred more than $2.189 million in unreimbursed response costs for response activities associated with the Pilsen Site through March 30, 2021.

41. In May 2021, the Defendants received EPA's written demand for payment of a specified amount of unreimbursed response costs that EPA incurred for response activities associated with the Pilsen Site.

42. EPA and the U.S. Department of Justice are continuing to incur response costs for response activities associated with the Pilsen Site, including costs of enforcement activities related to the Pilsen Site removal work.

CERCLA ALLEGATIONS

43. Lead is a "hazardous substance" within the meaning of CERCLA §§ 101(14) and 107(a), 42 U.S.C. §§ 9601(14) and 9607(a).

44. Zinc is a "hazardous substance" within the meaning of CERCLA §§ 101(14) and 107(a), 42 U.S.C. §§ 9601(14) and 9607(a).

45. Copper is a "hazardous substance" within the meaning of CERCLA §§ 101(14) and 107(a), 42 U.S.C. §§ 9601(14) and 9607(a).

46. The Pilsen Site is a "facility" within the meaning of CERCLA §§ 101(9)(B) and 107(a), 42 U.S.C. §§ 9601(9)(B) and 9607(a), because the Pilsen Site is a site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located.

47. There have been "releases" of hazardous substances from the Kramer Facility that came to be located at the Pilsen Site within the meaning of CERCLA §§ 101(22) and 107(a), 42 U.S.C. §§ 9601(22) and 9607(a).

48. There have been "releases" and "threatened releases" of hazardous substances at and from the Pilsen Site – including at the BNSF Railroad Property and the City Alley Property – within the meaning of CERCLA §§ 101(22) and 107(a), 42 U.S.C. §§ 9601(22) and 9607(a).

49. Kramer is a "person" within the meaning of CERCLA § 101(21), 42 U.S.C. § 9601(21).

50. The Kramer Facility is a "facility" within the meaning of CERCLA §§ 101(9)(A) and 107(a), 42 U.S.C. §§ 9601(9)(A) and 9607(a), because the Kramer Facility is a building, structure, or installation.

51. Kramer is the "owner" and "operator" of the Kramer Facility within the meaning of CERCLA §§ 101(20) and 107(a)(1), 42 U.S.C. §§ 9601(20) and 9607(a)(1).

52. Kramer "owned" and "operated" the Kramer Facility at the time of disposal of hazardous substances at that facility within the meaning of CERCLA §§ 101(20) and 107(a)(2), 42 U.S.C. §§ 9601(20) and 9607(a)(2).

53. Kramer therefore: (i) owns and operates a facility from which there have been releases of hazardous substances, and there were releases of hazardous substances from that facility to the Pilsen Site; and (ii) owned and operated a facility at the time of disposal of

hazardous substances at that facility, and there were releases of hazardous substances from that facility to the Pilsen Site.

54. In light of the foregoing, Kramer is liable to the United States in this action under: (i) CERCLA § 107(a)(1), 42 U.S.C. § 9607(a)(1); and (ii) CERCLA § 107(a)(2), 42 U.S.C. § 9607(a)(2).

55. BNSF is a "person" within the meaning of CERCLA § 101(21), 42 U.S.C. § 9601(21).

56. The BNSF Railroad Property is a "facility" within the meaning of CERCLA §§ 101(9)(B) and 107(a), 42 U.S.C. §§ 9601(9)(B) and 9607(a), because the BNSF Railroad Property is a site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located.

57. BNSF "operated" the BNSF Railroad Property at the time of disposal of hazardous substances at that facility within the meaning of CERCLA §§ 101(20) and 107(a)(2), 42 U.S.C. §§ 9601(20) and 9607(a)(2).

58. BNSF therefore operated a facility at the time of disposal of hazardous substances at that facility, and there were releases and threatened releases of hazardous substances at and from that facility at the Pilsen Site.

59. In light of the foregoing, BNSF is liable to the United States in this action under CERCLA § 107(a)(2), 42 U.S.C. § 9607(a)(2).

60. The City is a "person" within the meaning of CERCLA § 101(21), 42 U.S.C. § 9601(21).

61. The City Alley Property is a "facility" within the meaning of CERCLA §§ 101(9)(B) and 107(a), 42 U.S.C. §§ 9601(9)(B) and 9607(a), because the City Alley Property

is a site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located.

62. The City is the "owner" and "operator" of the City Alley Property within the meaning of CERCLA §§ 101(20) and 107(a)(1), 42 U.S.C. §§ 9601(20) and 9607(a)(1).

63. The City "owned" and "operated" the City Alley Property at the time of disposal of hazardous substances at that facility within the meaning of CERCLA §§ 101(20) and 107(a)(2), 42 U.S.C. §§ 9601(20) and 9607(a)(2).

64. The City therefore: (i) owns and operates a facility from which there have been releases of hazardous substances, and there were releases and threatened releases of hazardous substances at and from that facility at the Pilsen Site; and (ii) owned and operated a facility at the time of disposal of hazardous substances at that facility, and there were releases and threatened releases of hazardous substances at and from that facility at the Pilsen Site.

65. In light of the foregoing, the City is liable to the United States in this action under: (i) CERCLA § 107(a)(1), 42 U.S.C. § 9607(a)(1); and (ii) CERCLA § 107(a)(2), 42 U.S.C. § 9607(a)(2).

66. Releases of hazardous substances from the Kramer Facility that came to be located at the Pilsen Site have caused the incurrence of "response" costs within the meaning of CERCLA §§ 101(25) and 107(a), 42 U.S.C. §§ 9601(25) and 9607(a).

67. Releases and threatened releases of hazardous substances at and from the Pilsen Site – including at the BNSF Railroad Property and the City Alley Property – have caused the incurrence of "response" costs within the meaning of CERCLA §§ 101(25) and 107(a), 42 U.S.C. §§ 9601(25) and 9607(a).

68. In undertaking response actions relating to the Pilsen Site, the United States has incurred response costs and costs of "removal" within the meaning of CERCLA §§ 101(23) and 107(a), 42 U.S.C. §§ 9601(23) and 9607(a).

69. The response costs and cost of removal that the United States incurred for the Pilsen Site were "not inconsistent with the national contingency plan" within the meaning of CERCLA §§ 101(31) and 107(a)(4)(A), 42 U.S.C. §§ 9601(31) and 9607(a)(4)(A).

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
(Cost Recovery Under CERCLA Section 107(a), 42 U.S.C. § 9607(a))

70. Paragraphs 1-69 are realleged and incorporated herein by reference.

71. The Defendants are liable to the United States for all unreimbursed response costs incurred by the United States in connection with the Pilsen Site, plus statutory prejudgment interest on such costs, pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a).

### SECOND CLAIM FOR RELIEF
(Declaratory Judgment for Recovery of Further Response Costs)

72. Paragraphs 1-69 are realleged and incorporated herein by reference.

73. The Defendants are liable to the United States for any unreimbursed further response costs that the United States incurs in connection with the Pilsen Site, not inconsistent with the National Contingency Plan, pursuant to CERCLA §§ 107(a) and 113(g)(2), 42 U.S.C. §§ 9607(a) and 9613(g)(2), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America respectfully request that this Court:

1. Enter judgment in favor of the United States and against the above-named Defendants for all response costs incurred by the United States, as well as prejudgment interest, for response actions in connection with the Pilsen Site;

2. Enter a declaratory judgment in favor of the United States and against the above-named Defendants for any unreimbursed further response costs that the United States incurs in connection with the Pilsen Site, not inconsistent with the National Contingency Plan;

3. Award the United States its costs of this action; and

4. Grant such other and further relief as the Court deems just and proper.

Signature Page for Complaint in *United States v. H. Kramer & Company, et al.* (N.D. Ill.)

FOR THE UNITED STATES OF AMERICA:

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

s/ *Randall M. Stone*
RANDALL M. STONE
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
202-514-1308
randall.stone@usdoj.gov


JOHN R. LAUSCH, JR.
United States Attorney

NIGEL B. COONEY
Assistant United States Attorney
Northern District of Illinois
219 S. Dearborn Street
Chicago, IL 60604
312-353-1996
nigel.cooney@usdoj.gov


OF COUNSEL:

Robert M. Peachey
Office of Regional Counsel
United States Environmental Protection Agency, Region 5
77 West Jackson Boulevard
Chicago, IL 60604

14